UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

CHARLOTTE INEZ MANN,                )
                                    )
            Plaintiff,              )
                                    )
v.                                  )          No. 2:22-CV-55-DCP
                                    )
KILOLO KIJAKAZI,[1]                 )
Acting Commissioner of Social Security,  )
                                    )
            Defendant.              )

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 18].  Now before the Court are

Plaintiff's Motion for Judgment on the Administrative Record [Doc. 11] and Defendant's Motion

for Summary Judgment [Doc. 19].  Charlotte Mann ("Plaintiff") seeks judicial review of the

decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Kilolo Kijakazi

("Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

I.    **PROCEDURAL HISTORY**

On April 22, 2019,[2] Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that

---

[1]    Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

[2]    Plaintiff states in her supporting memorandum that she filed her application on April 23,
2019 [Doc. 16 p. 2 (citing Tr. 287–88)].  It appears Plaintiff filed her application materials on April
22, 2019 [Tr. 168–69], but the Social Security Administration spoke with her on April 23, 2019,
and helped her complete her application at that time [*Id.* at 287–88].

began on March 23, 2019 [Tr. 168–69].  After her application was denied initially [*Id.* at 188] and upon reconsideration [*Id.* at 212], Plaintiff requested a hearing before an ALJ [*Id.* at 232–33].  A telephonic administrative hearing was held before the ALJ on October 29, 2020 [*Id.* at 62–103].  On February 23, 2021, the ALJ found that Plaintiff was not disabled [*Id.* at 11–29].  The Appeals Council subsequently denied Plaintiff's request for review on April 15, 2022 [*Id.* at 1–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 23, 2022, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1].  The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since March 23, 2019, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease, obesity, diabetes, hypothyroidism status post thyroidectomy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to the following: no climbing or crawling; only occasional bending or stooping; no operating foot controls; and she would have to change position every thirty minutes.

2

6. The claimant is capable of performing past relevant work as a Dispatcher, DOT Code 379.362-018, sedentary with an SVP of 5; Surveillance System Monitor, DOT Code 379.367-010, sedentary with an SVP of 2; Telemarketer, DOT Code 299.357-014, sedentary with an SVP of 3. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2019, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 16–29].

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the

3

Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ---U.S.---, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

4

if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff raises three arguments on appeal as to why the ALJ's decision should be remanded. First, she argues the ALJ erred by finding she did not meet Listing 1.04 [Doc. 16 pp. 13–15]. Second, she argues the ALJ erred when determining her RFC because the ALJ did not consider "all" of the record evidence [*Id.* at 15–18]. Third, Plaintiff argues this case should be remanded under sentence six of 42 U.S.C. § 405(g) to the extent she presented new and material evidence to the Appeals Council regarding the continuing nature of her disability [*Id.* at 18–19]. The Commissioner responds that substantial evidence supports the ALJ's determination that Plaintiff did not meet Listing 1.04, including the requirement that Plaintiff consistently have motor loss accompanied by sensory or reflex loss [Doc. 20 pp. 3–6]. The Commissioner next argues that the ALJ did consider all of the record evidence, even if he did not expressly cite to it in his opinion, and that the ALJ's RFC determination is otherwise supported by substantial evidence [*Id.* at 6–12]. Finally, the Commissioner argues that the additional evidence submitted to the Appeals Council is not material and that Plaintiff has failed to show good cause for not submitting it to the ALJ [*Id.* at 13–14]. Having reviewed this matter and considered the parties' arguments, the Court finds Plaintiff has not presented a valid basis for disturbing the Commissioner's decision or otherwise remanding the case for further proceedings.

### A.    Listing 1.04

Plaintiff first argues the ALJ committed reversible error by finding she did not meet Listing 1.04 [Doc. 16 pp. 13–15]. In support of her argument, Plaintiff points to evidence in the record

that she claims establishes each element of Listing 1.04 [*Id.*]. The Commissioner responds that Plaintiff has failed to present evidence of at least one of Listing 1.04's requisite elements, namely, findings of motor loss accompanied by sensory or reflex loss and, regardless, "the ALJ discussed evidence that contradicted a finding of motor loss sufficient to satisfy the listing" [Doc. 20 p. 5]. The Court finds that the ALJ's determination that Plaintiff does not meet Listing 1.04 is supported by substantial evidence.

### 1.      Applicable Law

A claimant will be found disabled at step three of the sequential evaluation if their impairments "meet" one or more of the listings in the Listings of Impairments. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)).[3] "The Listing of Impairments . . . describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (quoting 20 C.F.R. § 404.1525(a)). "Because the Listings permit a finding of disability based solely on medical evidence (without considering a claimant's vocational profile), the Commissioner applies a heightened evidentiary standard at step three." *Riccota v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-1259-TMP, 2022 WL 3045318, at *13 (W.D. Tenn. Aug. 2, 2022) (citing *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 710 (6th Cir. 2013)).

---

[3]      "[A] claimant is also disabled if her impairment is the medical equivalent of a listing." *Reynolds*, 424 F. App'x at 414 (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). An impairment is the medical equivalent of a listing if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). Plaintiff does not assert on appeal that her impairments medically equal Listing 1.04.

7

"Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing.'" *Reynolds*, 424 F. App'x at 414 (quoting 404.1524(c)(3)). "A claimant must satisfy all of the criteria to 'meet' the listing." *Id.* "An impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Riccota*, 2022 WL 3045318, at *13 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "The impairment must [also] last for at least twelve months to meet the terms of the listing." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(2)(a)). "The regulations make no provision [] for claimants whose condition is reasonably found to be sporadic or intermittent." *Id.* at 784. Ultimately, it is a claimant's burden to demonstrate their impairments meet a relevant listing. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### 2. Whether the ALJ Erred in Finding Plaintiff does not Meet Listing 1.04

Plaintiff argues the ALJ erred by finding that she does not meet Listing 1.04 [Doc. 16 pp. 13–15]. At the time of the ALJ's decision, Listing 1.04 covered disorders of the spine that "result[ed] in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. pt. 404, subpart P, app. 1, § 1.04 (February 23, 2021) ("Listing 1.04").[4] In order to meet the listing, a claimant was required to provide either "[e]vidence of nerve root compression," [s]pinal arachnoiditis," or "[l]umbar spinal stenosis resulting in pseudoclaudication." *Id.* As relevant to the present case,[5] the:

---

[4] Listing 1.04 has since been repealed and replaced with 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.15 (2022). *See Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164 (Dec. 3, 2020).

[5] Plaintiff does not argue that she meets the listing because of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.

[e]vidence of nerve root compression [must be] characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* This Court has previously summarized the evidence of nerve root compression as requiring:

"(1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4) sensory or reflex loss, and (5) sitting and supine positive straight[-]leg test results." *Chigano v. Kijakazi*, No. 3:20-CV-00256-HBG, 2021 WL 3934475, at *4 (E.D. Tenn. Sept. 2, 2021).

In this case, the ALJ found Plaintiff's spine disorder did not meet Listing 1.04, reasoning:

The claimant has argued that she meets the criteria of Listing 1.04 regarding disorders of the spine (Exhibit B36E). Listing 1.04 requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising tests (sitting and supine). The claimant has an extensive history of treatment for degenerative disc disease, with records establishing that the claimant experienced a disc herniation at the L4-5 levels following a motor vehicle accident in 2014. The claimant subsequently underwent the placement of a spinal cord stimulator and has been seen by multiple specialists since that time, with more recent office visits to specialists at Vanderbilt noted in 2020. In their brief, the claimant notes findings by Dr. Robert Blaine, who noted the claimant to exhibit limited ranges of motion of her spine and noted the claimant to report she could not feel light touch in her right foot at all (Exhibit B38F). However, it is also noted in Dr. Blaine's report that the claimant enjoyed full flexor and extensor strength bilaterally, and the claimant's gait was noted to be normal for her size (*Id*).

More recently, records indicate that the claimant had re-established primary care services with providers at ETSU Family Physicians in June 2020 (Exhibit B45F). On follow-up in July 2020, the claimant reported that she had been seen on an emergency basis for increased back pain and bilateral lower extremity numbness. It was noted at that time that the claimant was walking with a cane, and providers noted the claimant to exhibit tenderness to palpation, though she remained able to move all four extremities, and no observations were noted of the claimant to exhibit sensory or reflex loss or muscle weakness. The claimant was seen in follow-up by providers at Vanderbilt Spine in August 2020, and while the claimant was noted to report weakness, providers noted that she remained able to stand without assistance and to walk, and while exam findings note positive right

9

sided straight[-]leg raises, in their assessment the claimant's physician noted the straight[-]leg raising to be "equivocal," and the claimant was noted to remain able to fire dorsiflexion and plantarflexion bilaterally, despite her reports of drop foot (Exhibits B44F, B48F). While updated imaging was noted to show a recurrent disc herniation at L4-5 with possible involvement of the L5 nerve root, additional examinations noted the claimant to exhibit only decreased pinprick sensation (Exhibits B46F, B49F, B50F). While Dr. Blaine noted the claimant to report complete sensory loss in her right foot, other providers have noted only decreased sensation. Additionally, Dr. Blaine noted the claimant to retain full strength at the time of his examination, and despite the claimant's reports of drop foot symptoms, the claimant has been noted to retain the ability to fire dorsiflexion and plantarflexion on the right. Because the documentary evidence does not reveal the co-occurrence of the necessary component symptoms of spinal disorder, the application of Listing 1.04 is inappropriate in the present case. The undersigned accordingly finds the claimant's spine disorder does not meet Listing 1.04.

[Tr. 20].

Plaintiff argues the ALJ's findings regarding Listing 1.04 are erroneous and otherwise not supported by substantial evidence to the extent there is evidence in the record supporting each of Listing 1.04's requirements [Doc. 16 pp. 13–15 (citing 1589, 1598, 1253, 1592, 1595, 1253, 1399, 1590, 1605–06, 1474, 41, 45, 49, 1594, 1399, 1474, 1606)]. Plaintiff asserts "[t]he ALJ relied almost entirely on the findings . . . [that] revealed she had the ability to fire dorsiflexion and plantarflexion on the right" but that "[t]his is not the definitive analysis" as, "[s]imply because one exam revealed the ability to fire on the right does not mean at times the claimant [does not] lose[] feeling in her right foot and trips over her right foot" [*Id.* at 15]. Plaintiff further argues that all elements are met because "[t]he record is clear that she has had to use a cane at times for stability, tripped over her right foot, has loss of sensation in the right foot, has L5 nerve root compromission, and a positive straight[-]leg raise both supine and sitting" [*Id.*]. Finally, she argues that "though the motor loss may not be as prolific as the ALJ might suggest it should be, there is absolute proof of motor loss primarily in the right leg with loss of sensation in both her right and left leg as pinprick exams mention them to be bilaterally consistent with L5 dermatome" [*Id.*].

10

In response, the Commissioner argues that "Plaintiff fails to cite to medical findings that support the existence of all the requirements of listing 1.04" [Doc. 20 p. 5]. "In particular, Plaintiff fails to show that the record contained the requisite findings of motor loss (defined as 'atrophy with associated muscle weakness' or 'muscle weakness')," whereas "the ALJ discussed evidence that contradicted a finding of motor loss sufficient to satisfy the listing" [*Id.*]. The Commissioner argues that Plaintiff misinterprets the evidence she is relying on to show the requisite motor loss, and that Plaintiff actually retained full strength on examination with normal muscle tone, had a normal gait, was able to move all four extremities despite walking with a cane, and retained the ability to fire dorsiflexion and plantarflexion on the right, stand without assistance, and walk, despite her reported drop step [*Id.* (citing Tr. 20–25, 1252–53, 1387, 1399, 1474, 1487)]. The Commissioner argues that while "Plaintiff does have pain and limitations that result from her degenerative disc disease and other impairments," as the ALJ acknowledged, "she has failed to meet her burden to show she . . . meets all of the specified criteria of listing 1.04A" [*Id.* at 6].

Having reviewed the parties' arguments, relevant potions of the record, and applicable authority, the Court finds that the ALJ's determination that Plaintiff does not meet Listing 1.04 is supported by substantial evidence. While Plaintiff cites evidence in the record that she argues supports each of Listing 1.04's requirements [Doc. 16 pp. 13–15], this Court's review is limited to whether the ALJ relied on legitimate evidence that substantiates the ALJ's findings, not whether the evidence could have supported an alternative conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: If the ALJ's decision is supported

11

by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." (internal quotations omitted)). Thus, the Court first turns to the evidence on which the ALJ relied.

Plaintiff challenges the evidence the ALJ relied on to the extent she asserts that "[t]he ALJ relied almost entirely on the findings at Vanderbilt[—]that examination revealed she had the ability to fire dorsiflexion and plantarflexion on the right" [Doc. 16 p. 15]. Contrary to Plaintiff's assertion, however, the ALJ's rationale was based on more than just the Vanderbilt examination. The ALJ referenced the fact that Plaintiff "was walking with a cane" in July 2020 and had "tenderness to palpation" but "remained able to move all four extremities" with "no observations [] noted of [Plaintiff] exhibit[ing] sensory or reflex loss or muscle weakness" [Tr. 20–21 (citing Exh. B45F)]. The ALJ also cited Plaintiff's August 2020 examination with Vanderbilt Spine, noting that: "while [Plaintiff] was noted to report weakness, providers noted that she remained able to stand without assistant and to walk"; the provider qualified their positive straight-leg raises by stating the results were "equivocal"; and Plaintiff was "able to fire dorsiflexion and plantarflexion bilaterally" [*Id.* at 21 (citing Exhs. B44F, B48F)]. Finally, the ALJ cited records from September and November 2020, stating "[w]hile updated imaging was noted to show a recurrent disc herniation at L4-5 with possible involvement of the L5 nerve root, additional examinations noted [Plaintiff] to exhibit only decreased pinprick sensation" [*Id.* (citing Exhs. B46F, B49F, B50F)].

The ALJ then compared the evidence from these July, August, September, and November 2020 records with the September 2019 findings of Dr. Robert Blaine, stating "[w]hile Dr. Blaine noted the claimant to report complete sensory loss in her right foot, other providers have noted only decreased sensation" [*Id.*]. The ALJ also stated that "Dr. Blaine noted the claimant to retain

12

full strength at the time of his examination, and despite the claimant's reports of drop foot syndrome, the claimant has been noted to retain the ability to fire dorsiflexion and plantarflexion on the right" [*Id.*].  Along with comparing Dr. Blaine's findings to the findings of Plaintiff's other physicians, the ALJ also cited other evidence from Dr. Blaine's report, including "that [Plaintiff] enjoyed full flexor and extensor strength bilaterally, and [Plaintiff's] gait was noted to be normal for her size" [*Id.* at 20 (citing B38F)].

The Court finds that this evidence—which includes more than just findings from the August 2020 Vanderbilt visit—is substantial evidence supporting the ALJ's conclusion that Plaintiff does not meet Listing 1.04 [*Id.* at 21].  In particular, the evidence that (1) Plaintiff had full flexor and extensor strength bilaterally and a normal gait for her size in September 2019, (2) there were no observations of sensory loss, reflex loss, or muscle weakness in July 2020, (3) Plaintiff was able to stand and walk without assistance and fire dorsiflexion and plantarflexion bilaterally in August 2020 despite her reported weakness, and (4) she had only decreased pinprick sensation in September and November 2020, all indicate that Plaintiff did not have the necessary motor loss accompanied by sensory or reflex loss.  *See Reed v. Comm'r of Soc. Sec.*, No. 17-cv-22, 2017 WL 6523295, at *4–5 (S.D. Ohio Dec. 21, 2017) (finding the ALJ's conclusion that the claimant did not meet Listing 1.04 was supported by substantial evidence when the ALJ cited evidence that "Plaintiff [] had full strength and function of his lower extremities, despite a 'decreased sensation to light touch and pinprick'" and had only "slightly decreased pinprick sensation . . . [with] full muscle strength, and a normal gait"), *report and recommendation adopted*, 2018 WL 1522076 (S.D. Ohio Mar. 28, 2019); *Goodman v. Comm'r of Soc. Sec.*, No. 12-CV-11346, 2013 WL 1349293, at *8 (E.D. Mich. Mar. 5, 2013) (finding "no objective medical evidence supporting the sensory or reflex loss portion of the requirements" despite "findings that

13

Plaintiff's sensation to pinprick and light touch was 'decreased'"), *report and recommendation adopted*, 2013 WL 1349290 (E.D. Mich. Apr. 2, 2013).  Plaintiff's failure to meet the motor-loss requirement precludes a finding that she meets Listing 1.04.  *See Reynolds*, 424 F. App'x at 414 ("A claimant must satisfy all of the criteria to 'meet' the listing.")

Plaintiff's arguments to the contrary are unconvincing.  Plaintiff argues she did have the requisite motor loss accompanied by sensory or reflex loss based on (1) Dr. Blaine's September 2019 finding that Plaintiff had no feeling in her right foot, (2) a finding in the August 2020 Vanderbilt report that Plaintiff had bilateral numbness in her lower extremities when sitting and pain in her hip, (3) a finding in an October 2020 Vanderbilt report that she had sensation deficits in the right lower extremity, and (4) the decreased pinprick sensations from November 2020, to argue she did have the requisite motor loss accompanied by sensory or reflex loss [Doc. 16 p. 14 (citing Tr. 1399, 1474, 1590, 1605–06)].[6]  As noted previously, however, the Court's review is limited to whether the evidence the ALJ relied on substantiates their conclusion, which is especially true in a case such as this, in which Plaintiff relies on the same evidence that the ALJ considered in their opinion.  *See Bialek v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-11508, 2021 WL 2935249, at *3 (E.D. Mich. July 13, 2021) ("The ALJ considered and discussed the very evidence on which Plaintiff relies. The Court cannot reweigh this evidence at this juncture."). Furthermore, even if the Court considers this additional evidence from Plaintiff, when construing this evidence with the other evidence in the record, it appears that some records during the relevant

---

[6]     Plaintiff also cites to evidence within medical records that were not available to the ALJ but were instead submitted for the first time to the Appeals Council after the ALJ's decision [Doc. 16 p. 14 ("Additional records from Omega Pain Management submitted to the Appeals Council indicate continued decreased sensation to pinprick in the L5 dermatome." (citing Tr. 41, 45, 49))]. The Court will address the relevance of this evidence when discussing whether remand is warranted under sentence six of § 405(g).

14

time period support motor loss with sensory or reflex loss while others do not such that Plaintiff did not continuously have the necessary impairments for the requisite amount of time. *See* 20 C.F.R. § 404.1525(c)(4) ("For some listings, we state a specific period of time for which your impairment(s) will meet the listing. For all others, the evidence must show that your impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months."); 20 C.F.R. pt. 404, subpart P, app. 1, § 1.04 (failing to list a specific period of time for which the impairments must last).

The Court therefore finds that the ALJ's conclusion that Plaintiff does not meet Listing 1.04 is supported by substantial evidence and that Plaintiff has otherwise failed to state sufficient grounds to disturb that conclusion. Accordingly, the Court denies Plaintiff's first basis for remand.

## B. Plaintiff's RFC

Plaintiff argues the ALJ also committed reversible error by "fail[ing] to consider 'all' evidence in determining [her] residual functional capacity at step 4 of the sequential evaluation process" and, instead, picking and choosing which evidence to consider when determining her RFC [Doc. 16 pp. 15–18]. The Commissioner responds that Plaintiff erroneously conflates an ALJ failing to expressly mention a record with failing to consider it altogether and that, in this case, the ALJ did consider all of the evidence, did not cherry pick the evidence he relied on, and supported his RFC determination with substantial evidence in the record [Doc. 20 pp. 6–11]. Having reviewed the parties' arguments, relevant portions of the record, and applicable authority, the Court finds that the ALJ did consider all of the relevant medical evidence even if he did not expressly cite certain records, he did not cherry pick which evidence he relied on, and his RFC determination is otherwise supported by substantial evidence.

15

### 1. Applicable Law

A claimant's "residual functional capacity is the most [they] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-08p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("SSR 96-8p"); *see also Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 355 (6th Cir. 2020) (quoting SSR 96-8p when defining RFC). "In other words, the RFC describes 'the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.'" *Page v. Comm'r of Soc. Sec.*, No. 2:21-cv-00166-SKL, 2022 WL 4455975, at *4 (E.D. Tenn. Sept. 23, 2022) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)).

An ALJ must assess a claimant's RFC "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1); *Id.* at § 416.920(e) ("[W]e will assess and make a finding about your [RFC] based on all the relevant medical and other evidence in your case record, as explained in § 416.945"); SSR 96-8p, 1996 WL 374184, at *5 ("The RFC assessment must be based on *all* of the relevant evidence in the case record[.]"); *cf.* 42 U.S.C. § 423(d)(5)(B) ("In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record[.]"). In assessing a claimant's RFC, "an ALJ may not selectively include only those portions of the medical evidence that places a claimant in a capable light, and fail to acknowledge evidence that potentially supports a finding of disability" such that they

16

"cherry-picked" the record. *Davidson v. Berryhill*, No. 16-cv-2521, 2017 WL 4682343, at *17 (N.D. Ohio Oct. 18, 2017) (collecting cases).

At the same time, an ALJ "need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004); *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir. 2018) ("[T]he ALJ was not required to explain every piece of evidence in the record . . . . as [a]n 'ALJ can consider all the evidence without directly addressing . . . every piece of evidence.'" (quoting *Loral Defense Sys.–Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999))); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (quoting *Loral Defense Sys.– Akron*, 200 F.3d at 453)). And as for cherry-picking arguments, "[t]he Sixth Circuit has cautioned that [such] allegations . . . are 'seldom successful' because they are invitations to reweigh record evidence, which a reviewing court may not do." *Paquette v. Saul*, No. 19-12006, 2020 WL 6391311, at *5 (E.D. Mich. July 29, 2020) (quoting *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014)); *see also Goodson v. Comm'r of Soc. Sec.*, No. 3:19-cv-00142-JRG-SKL, 2020 WL 4278653, at *12 (E.D. Tenn. June 3, 2020) (first citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); and then citing *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014)), *report and recommendation adopted*, 2020 WL 4275036 (E.D. Tenn. July 24, 2020).

### 2. Whether the ALJ Erred in Determining Plaintiff's RFC

In this case, the ALJ found that "[Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she is limited to the following: no climbing or crawling; only occasional bending or stooping; no operating foot controls; and she

17

would have to change position every thirty minutes" [Tr. 21]. Plaintiff raises two arguments related to the ALJ's RFC determination. First, she argues that the ALJ's finding that Plaintiff would have to be able to change position every thirty minutes "is without support in the record" as it ignores two of Plaintiff's relevant treatment records—records that align with her own testimony and later medical records—and, instead, relies on one other treatment record from the same providers [Doc. 16 pp. 16–18]. Second, Plaintiff argues the ALJ erred in formulating Plaintiff's RFC to the extent "the ALJ failed to address the effects of [] Tizanidine on [her] ability to maintain a fulltime workday" [*Id.* at 18]. The Court will address each argument in turn.

### a. The ALJ's Position-Changing Requirement

Plaintiff argues that "[t]he ALJ's finding that the ability to stand every 30 minutes would relieve her pain is without support in the record" and that the ALJ failed to consider all the record evidence related to this limitation [*Id.* at 15–18]. Specifically, she argues the ALJ failed to "consider or mention" her treatment records from Pain Medicine Associates ("PMA") for January 24, 2019, and April 18, 2019 [*Id.* at 16]. Plaintiff argues the January 24, 2019 records were important to the extent the physician reported that Plaintiff had "mildly antalgic gate," "positive left and right straight[-]leg raise," limited range of motion in the L-Spine with pain, and "diminished sensation in L5 dermatome" [*Id.* (citing Tr. 1380–81)]. Plaintiff also cites the physician's statement in the report that he "explained sitting is the worst thing for [Plaintiff's] back" and "encouraged her to take frequent standing breaks and to get up and walk as much as possible" [*Id.* (quoting Tr. 1381)]. Plaintiff argues that the April 18, 2019 treatment notes were also important to the extent Plaintiff reported her back pain had increased to 7/10 with radiating pain and weakness and the doctor had reported that Plaintiff had a mildly antalgic gate with lumbar paraspinal tender to palpation, positive straight-leg raise on the left and right, "grossly limited"

18

range of motion in the L-Spine with pain, diminished sensation in an L5 dermatome, and decreased sensation from the right knee downward [*Id.* at 16–17 (citing Tr. 1383–84)].

Plaintiff argues that while the treatment notes from these two dates "support [her] testimony[7] . . . and findings by Vanderbilt and Omega Pain Management over a year later" [*Id.* at 17], the ALJ decided to instead "pick and choose" which evidence to consider [*Id.* at 18] and ultimately only cited the PMA treatment notes from July 2019—records that Plaintiff states "happened to be the only date that PMA reported she had a negative straight[-]leg [raise] on exam" [*Id.* at 16]. Plaintiff argues the ALJ's failure to consider all of the evidence is problematic because "[t]he vocational expert testified that if a person required a sit/stand option 'at will' as opposed to every 30 minutes and [] needed to walk away from the work area outside of a normal break or lunch there would be no jobs" [*Id.* at 18 (citing Tr. 101–02)].

Having reviewed the ALJ's decision, the Court finds that the ALJ did not err when determining Plaintiff's RFC and only requiring that Plaintiff would need to change positions every thirty minutes. Plaintiff is correct that the ALJ did not expressly cite to the January or April 2019 PMA records in his decision. However, this fact is not dispositive as the ALJ "need not discuss every piece of evidence in the record for [their] decision to stand." *Thacker*, 99 F. App'x at 665. Rather, the Court must determine whether the entire record was considered, as opposed to discussed, and whether the ALJ cherry-picked the record by "selectively includ[ing] only those portions of the medical evidence that places [Plaintiff] in a capable light, and fail[s] to acknowledge evidence that potentially supports a finding of disability." *Davidson*, 2017 WL

---

[7]     Plaintiff cites her testimony that "the greatest difference between her condition now and the previous application for benefits is her inability to sit for longer than five to ten minutes at a time due to severe back pain and her legs going numb" [Doc. 16 p. 17 (citing Tr. 73–74, 469, 499)].

19

4682343, at *17. In this case, the Court is satisfied that the ALJ considered all of the record evidence and did not cherry pick which evidence to rely on because the evidence from the January and April 2019 PMA records that Plaintiff argues was important for the ALJ to consider is the same, or similar, evidence to what the ALJ did consider in his decision and, at times, even found persuasive.

Specifically, Plaintiff cites to the findings from the January 2019 PMA report that she had an antalgic gate, positive straight-leg raise tests, limited range of motion, and diminished sensation in her L5 dermatome [Doc. 16 p. 16 (citing Tr. 1380–81)]. Similarly, she cites to her reports of increased back pain with radiating pain and weakness as well as the physician's report of mildly antalgic gate with lumbar paraspinal tender to palpation, positive straight-leg raise testing, "grossly limited" range of motion with pain, and diminished L5 dermatome sensation from her April 2019 PMA report [Id. at 16–17 (citing Tr. 1383–84)]. The ALJ, however, cited Plaintiff's "antalgic gate," "persistent reports of lower extremity pain," "observations of the claimant's reduced lumbar range of motion," "positive straight[-]leg raising exams[,] and diminished sensation" in his decision [Tr. ]. In particular, he "note[d] that the claimant was reported to exhibit an antalgic gait by providers at [PMA] in July 2019" [Id. at 25].[8] He also cited "the claimant's persistent reports of lower extremity pain, the imaging studies of record demonstrating degenerative changes in the claimant's lumbar spine, and observations of the claimant's reduced lumbar range of motion"

---

[8] Although he also noted that "additional exam findings were largely benign as the claimant was noted to exhibit stable hips, full strength, normal muscle tone and a negative straight[-]leg raise at that time" [Tr. 25 (citing Exh. B36F)]. That the ALJ found the evidence of Plaintiff's antalgic gait was contradicted by other evidence in the record does not take away from the fact that the ALJ considered, and expressly mentioned, the evidence in his decision.

20

[*Id.*].[9]  Finally, he stated that Plaintiff "was noted at times to exhibit positive straight[-]leg raising exams and diminished sensation" [*Id.* at 26].  Each of these citations to the evidence, in turn, occurred while the ALJ was discussing any limitations Plaintiff might have with respect to sitting, standing, and walking [*Id.* at 25, 26].

While the ALJ's failure to cite to the record when making some of these statements makes it unclear whether Plaintiff was citing to the January and April 2019 reports or other reports in the record containing the same information, regardless, it is clear that the ALJ considered all of the record evidence and did not selectively include only that evidence that painted Plaintiff in the most capable light.  In fact, the only evidence from either the January or April 2019 reports that Plaintiff cites to in her brief that does not have a corresponding reference in the ALJ's decision is the physician's statement in the January 2019 report that "[he] explained sitting is the worst thing for [Plaintiff's] back. . . . [and he] encouraged her to take frequent standing breaks and to get up and walk as much as possible" [*Id.* at 1381].  However, the ALJ's failure to reference this sole statement—which is not accompanied by any further explanation as to what is meant by "frequent" standing breaks or walking "as much as possible"—is insufficient to show the ALJ did not consider the entire record or that he cherry-picked the evidence.[10]

---

[9]  Not only did the ALJ cite this evidence, he also found it supported limiting Plaintiff to sedentary work [Tr. 25 ("Given the claimant's persistent reports of lower extremity pain, the imaging studies of record demonstrating degenerative changes in the claimant's lumbar spine, and observations of the claimant's reduced lumbar range of motion, the undersigned finds the claimant is limited to the sedentary exertional level, as the more significant standing and walking requirements of the light exertional level could reasonably be expected to exacerbate the claimant's pain, given her testimony and recurrent reports that her pain is exacerbated by movement and activity.")].

[10]  The Court also notes Plaintiff's argument that the ALJ's error requires remanding the case because "[t]he vocational expert testified that if a person required a sit/stand option 'at will' as opposed to every 30 minutes and a needed to walk away from the work area outside of a normal

21

For all these reasons, the Court finds that the ALJ did consider the entire record when limiting Plaintiff to changing positions every thirty minutes and did not selectively include only that evidence that placed Plaintiff in a capable light or otherwise fail to acknowledge evidence that would support Plaintiff's claim.

### b. The ALJ's Failure to Address Plaintiff's Tizanidine Side Effects

Plaintiff also briefly argues that the ALJ failed to consider all of the relevant evidence to the extent he "failed to address the effects of [Plaintiff's] Tizanidine [prescription] on [her] ability to maintain a fulltime workday due to the impact of the medication making her dizzy and drowsy" [Doc. 16 p. 18]. Plaintiff states that "[t]he record is replete with reports of the medication be[ing] [prescribed]" [*Id.*]. She also cites her own testimony that the side effects of the medication last up to four hours [*Id.*]. Finally, she asserts that her stated side effects are "a common effect of the medication" and that the ALJ's [f]ailure to consider the impact on [her] ability to work is reversible error" [*Id.*].

In response, the Commissioner argues that "the ALJ did consider side effects from [Plaintiff's] medications, in that he specifically acknowledged Plaintiff's report that she utilized a muscle relaxer (Tizanidine) that made her drowsy" [Doc. 20 p. 11 (citing Tr. 22, 80)]. In addition,

---

break or lunch there would be no jobs" [Doc. 16 p. 18 (citing Tr. 101–02)]. While Plaintiff correctly summarizes a portion of the vocational expert's testimony, the vocational expert also testified that requiring an "at will" standing-sitting option would not preclude any jobs but, rather, it was that Plaintiff would need to walk away from the work area that led to there being no available jobs in the national economy. See Tr. 101–03. Thus, even if the Court were to assume that the ALJ should have, but did not, consider all of the relevant evidence including the January and April 2019 PMA reports, it is unclear to the Court how the evidence from those reports would necessitate a limitation where not only would Plaintiff need to be able to change positions at will, she would also need to regularly walk away from the work station. Accordingly, any error by the ALJ in this regard would appear to be harmless.

22

the Commissioner argues that "the ALJ is not required to discuss every factor in [his] decision" [*Id.* (citing *Thacker*, 99 F. App'x at 665)]. The Commissioner asserts that the ALJ did discuss "Plaintiff's course of treatment and acknowledged Plaintiff's reported side effects, and any additional factors are outweighed in this case by the factors on which the ALJ explicitly relied" [*Id.* at 11–12]. Finally, the Commissioner argues that "Plaintiff's argument reflects how she would have evaluated the medical evidence" and while "Plaintiff may understandably wish the ALJ had evaluated the evidence differently, her mere disagreement with the ALJ's conclusions does not warrant remand" [*Id.*].

Having reviewed the parties' arguments and the applicable portions of the record, the Court finds that Plaintiff has not stated a basis for remand. While Plaintiff argues that "the ALJ failed to address the effects of [her] Tizanidine on [her] ability to maintain a fulltime workday due to the impact of the medication making her dizzy and drowsy" [Doc. 16 p. 18], the only evidence Plaintiff cites to in the record that references Plaintiff's purported side effects from Tizanidine is her own testimony during the administrative hearing. The ALJ did consider this evidence, however, as he stated in his decision that "[Plaintiff] reported that she utilizes a muscle relaxer which makes her drowsy" but ultimately found Plaintiff's "statements about the intensity, persistence, and limiting effects of . . . [her] symptoms . . . inconsistent with the record as a whole" [Tr. 22].

While Plaintiff also cites to the fact that the "record is replete with reports of the medication be[ing] [prescribed]" [Doc. 16 p. 18], Plaintiff only asserts that these records reveal the medication was prescribed—not that she experienced any side effects from the medication.[11] In fact, the Court's own review of the record reveals that on at least one occasion where Plaintiff's treatment

---

[11] Despite asserting the record is replete with reports of the medication being prescribed, Plaintiff fails to cite to any such reports.

23

records indicate she was taking four milligram doses of Tizanidine, also known as Zanaflex, she denied any "fatigue, malaise," "headaches, vertigo, lightheadedness," "incoordination," or "loss of balance" [Tr. 1454–55]. Finally, while Plaintiff cites a website that states Tizanidine is a muscle relaxant that "works by slowing action in the brain and nervous system" and has "side effects [of] dizziness, [and] drowsiness" among others [Doc. 16 p. 18 (citing *Id.* at p. 7 (citing *Tizanidine*, MedlinePlus (Nov. 15, 2015), https://medlineplus.gov/druginfo/meds/a601121.html))], this source lists only what side effects the medication "can" cause and, regardless, the ALJ is only required to consider all of the evidence in the record—not evidence from outside medical websites.

Thus, the only evidence in the record that shows that Plaintiff may have had side effects from Tizanidine is her own testimony at the administrative hearing. The ALJ, however, acknowledged this testimony but found Plaintiff's testimony as a whole was unpersuasive to the extent it was inconsistent with the remainder of the record evidence—evidence that is, in turn, devoid of any other indications of Tizanidine side effects and which contains Plaintiff's own reports that she had no fatigue or dizziness despite taking the medication. For these reasons, the Court finds that Plaintiff's argument that the ALJ failed to consider, or address, the effects of Plaintiff's Tizanidine medication is unpersuasive.

Because the ALJ properly considered all the evidence in the record—including the evidence in the January and April 2019 PMA reports as well as Plaintiff's own testimony regarding the side effects of her Tizanidine medication—and did not otherwise cherry-pick the record, the Court denies Plaintiff's second basis for remand.

## C. Additional Evidence

Finally, Plaintiff argues her case should be remanded because "[n]ew and material evidence of the continuing nature of the claimant's disability should be considered by the ALJ pursuant to

24

Sentence 6 of 42 U.S.C. § 405(g)" [Doc. 16 pp. 18–19]. Plaintiff states that the new evidence was not available to the ALJ at the time of his decision as it was not obtained until April 7, 2021, but that it was subsequently submitted to the Appeals Council prior to its determination [*Id.*]. The new evidence Plaintiff is referring to consists of treatment records from December 2, 2020, December 30, 2020, January 29, 2021, and February 25, 2021 [Tr. 39–54].[12] Plaintiff cites these treatment records to show that she "was to be seen for removal of [her] SCS (simulator)," she "was prescribed significant narcotic medications for pain control," "her physical exams indicat[ed] positive straight[-]leg raises bilaterally with diminished sensation in the L5 dermatome," she was prescribed "Tizanidine HCl 4 mg three times a day," her care and treatment have "only resulted in 40% pain relief" [Doc. 16 pp. 18–19 (citing Tr. 37–54)], and she had "continued decreased sensation to pinprick in the L5 dermatome" [*Id.* at 14 (citing Tr. 41, 45, 49)]. Plaintiff argues that this evidence "could reasonably impact the decision of the ALJ upon remand" [*Id.* at 19].

In response, the Commissioner argues that this additional evidence "is not material and Plaintiff ha[s] not shown good cause for failing to submit it to the ALJ" [Doc. 20 p. 13]. The Commissioner notes that the Appeals Council considered the additional evidence but found that it did not show a reasonable probability of changing the outcome of the ALJ's decision [*Id.* (citing Tr. 2)]. The Commissioner asserts that Plaintiff contends on appeal that remand is required but fails to explain how the evidence would show a reasonable probability of changing the outcome of the ALJ's decision [*Id.*]. The Commissioner argues that "[t]he submitted records show that Plaintiff reported pain and, on examination, showed positive straight[-]leg raises and decreased

---

[12]     The December 2, 2020, December 30, 2020, and January 29, 2021 records were prepared by Felicia Bertram, N.P. [Tr. 39–50]. The February 25, 2021 record was prepared by Staci Dunn, N.P. [*Id.* at 51–54]. All records were co-signed by Igor Smelyansky, M.D. [Tr. 39–55].

25

sensation" but that "[t]his evidence was entirely in line with evidence already considered by the ALJ" such that remand is not warranted in this case [*Id.* at 14].

The Court finds that the additional evidence Plaintiff submitted to the Appeals Council following the ALJ's decision does not warrant remanding this case under sentence six of 42 U.S.C. § 405(g). The Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. 405(g). The Sixth Circuit has held that "a remand under 42 U.S.C. § 405(g) 'sentence six' for consideration of additional evidence is warranted only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001)). "The claimant bears the burden of showing that all three requirements have been met in order to obtain a remand." *Sutton v. Soc. Sec. Admin.*, No. 09-2288, 2011 WL 9482974, at *3 (6th Cir. Apr. 5, 2011).

In this case, Plaintiff has failed to meet her burden of showing the additional evidence is material. New evidence is "'material' only if there is a reasonable probability that the [Commissioner or ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." *Ferguson*, 628 F.3d at 276 (quoting *Foster*, 279 F.3d at 357). "Evidence which is 'cumulative of' other evidence or opinions 'already present in the record' is not material." *Farahani v. Comm'r of Soc. Sec.*, No. 2:21-cv-11125, 2022 WL 3216407, at *17 (E.D. Mich. June 15, 2022) (quoting *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 149 (6th Cir. 1990) and citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005)); *see also Ferguson*, 628 F.3d at 276 (upholding the Appeals Council's and district court's findings

26

that the new evidence was not material because it was "cumulative" when the new evidence "confirm[ed] the pre-existing evidence").

The additional evidence that Plaintiff relies on from the December 2, 2020, December 30, 2020, January 29, 2021, and February 25, 2021 reports is cumulative of the record evidence that the ALJ considered in his opinion and does not otherwise create a reasonable probability that the ALJ would have reached a different outcome if presented with the evidence. For example, Plaintiff argues the additional records show she met Listing 1.04 to the extent these records "indicate continued decreased sensation to pinprick in the L5 dermatome" [Doc. 16 p. 14 (citing Tr. 41, 45, 49)]. However, the ALJ already cited several instances of Plaintiff's decreased pinprick sensation in his decision and, in fact, found such evidence cuts against a finding that Plaintiff met Listing 1.04. *See* Tr. 21 ("While updated imaging was noted to show a recurrent disc herniation at L4-5 with possible involvement of the L5 nerve root, additional examinations noted the claimant to exhibit only decreased pinprick sensation (Exhibits B46F, B49F, B50F). While Dr. Blaine noted the claimant to report complete sensory loss in her right foot, other providers have noted only decreased sensation.").

The remaining evidence that Plaintiff cites to from the additional records is similarly cumulative. Specifically, Plaintiff cites to her positive straight-leg raising tests, diminished sensation in the L5 dermatome, and continued pain—as shown by her being seen for removal of her SCS simulator, being prescribed narcotic medications for pain, and the physicians' findings that Plaintiff's treatment has only resulted in 40% pain relief from her conditions—and argues that these "exam findings support [her] position . . . that she suffers from severe back pain radiating into her lower extremities making it very difficult to sit for any length of time" [Doc. 16 pp. 18– 19]. As Plaintiff herself acknowledges, however, this evidence contains "similar findings" to the

27

January and April 2019 PMA reports [*Id.*]. As the Court discussed previously, the January and April 2019 PMA reports themselves overlapped to a considerable degree with the evidence the ALJ considered in his opinion.

Specifically, the ALJ cited that "[Plaintiff] was noted at times to exhibit positive straight[-]leg raising exams and diminished sensation" but found this evidence was inconsistent with the fact that "providers frequently noted [Plaintiff] to retain full strength in her lower extremities, and a normal gait, . . . which support a finding that [Plaintiff] remains able to perform the standing and walking requirements of the sedentary exertional level" [Tr. 26]. Thus, the ALJ not only considered similar evidence to what Plaintiff points to in the new records, but also considered it for the same reason now urged by Plaintiff, namely, her inability to meet the positional requirements of a sedentary-level job. Notably, while the ALJ did not have information about Plaintiff's SCS being removed, the fact that she was prescribed narcotic medication, or the physicians' opinions that her treatment resulted in only 40% pain relief, he did note "[Plaintiff's] persistent reports of lower extremity pain" and limited her to sedentary work, in part, because of her lower extremity pain [*Id.* at 25]. Thus, the additional evidence that Plaintiff points to from the recent treatment records to support greater limitations than those adopted by the ALJ in his RFC determination are, in large effect, cumulative of the evidence he did consider in determining her RFC and, thus, not material.

Finally, Plaintiff cites to the fact that the additional treatment records "indicate the prescribing of Tizanidine HCI 4 mg three times a day" [Doc. 16 p. 19 (citing Tr. 53)]. This evidence is not material, however, as the record evidence that was available to the ALJ already showed Plaintiff being prescribed Tizanidine in the same dosage with no reported side effects [Tr. 1454–55]. Furthermore, the additional evidence only shows that Plaintiff was prescribed the

28

medication, not that she had any side effects from the medication. Thus, even with this additional evidence, the only evidence of Plaintiff having side effects from the medication is her own testimony, which the ALJ already considered and discounted.

In sum, the additional treatment records submitted for the first time to the Appeals Council were not "material" because the evidence Plaintiff relies on form these records is cumulative of the evidence already considered by the ALJ and, in several instances, cited in his decision. Plaintiff has therefore failed to show a reasonably probability that the ALJ would have reached a different outcome if presented with this additional evidence. Accordingly, the Court denies Plaintiff's final basis for remand under sentence six of 42 U.S.C. § 405(g).

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 11**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
Debra C. Poplin
United States Magistrate Judge